UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERNICE N. JONES,

       Plaintiff,

v().                                              Case No. 1:05-CV-546
                                                Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI). For the reasons stated below, the undersigned recommends that the ALJ's decision be affirmed.

       Plaintiff was born on August 9, 1986 and was in the 11th grade at the time of her hearing (AR 76, 210).[1] Plaintiff stated that she became disabled on August 9, 1986 (AR 76). Plaintiff identified her disabling condition as a club foot (AR 110). By way of background, plaintiff was 15 years old when her mother applied for childhood disability benefits (AR 76). At the time of the administrative hearing, plaintiff was 18 years old (AR 210). Plaintiff appeared at the administrative hearing without a representative (AR 206-07). After administrative denial of plaintiff's claim, an ALJ reviewed plaintiff's claim *de novo* and entered a decision on January 10, 2005, finding that plaintiff was not disabled (AR 19-29). This decision, which was later approved

---

[1] Citations to the administrative record will be referenced as (AR "page #").

by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

In this unusual case, the ALJ reviewed plaintiff's claim as both a disabled child and a disabled adult (AR 19-29).

### A.  Legal standard for a child

An individual under the age of 18 shall be considered disabled if the child, "has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Agency has adopted a three-step sequential evaluation for determining childhood disability. *See Miller o/b/o Devine v. Commissioner of Social Security*, 37 Fed Appx. 146, 148 (6th Cir. 2002). First, the Commissioner must determine whether the child is engaged in any substantial gainful activity. 20 C.F.R. § 416.924(b). Second, if the child is not so engaged, then the Commissioner must determine whether the child suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.924(c). Third, if the child suffers from a severe impairment or combination of impairments, it must then be determined whether the child's impairment meets, medically equals, or functionally equals an impairment listed in the Listing of Impairments (20 C.F.R. pt. 404, subpt. P, app. 1). 20 C.F.R. § 416.924(d). For purposes of step three, "functional equivalence" is defined as an impairment of listing-level severity, which requires either "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The six relevant domains of functioning are: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself; and, health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

### B.  Legal standard for an adult

An adult disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment

3

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).[2]

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

---

[2] The federal court's standard of review for supplemental security income cases "mirrors" the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

### A. Evaluation of Bernice Jones as a child

Following the three steps, the ALJ first found that plaintiff has not engaged in substantial gainful activity (AR 20). Second, the ALJ found that she suffered from severe impairments of "congenital clubfoot, s/p Achilles lengthening and casting; and borderline intellectual functioning" (AR 22). At step three, the ALJ found that the limitations resulting from plaintiff's impairment, did not meet, medically equal or functionally equal any of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 22-25). The ALJ further found that, prior to age 18, plaintiff's impairments did not result in "marked" or "severe" limitations in two domains of functioning and that she did not have an impairment or combination of impairments that functionally equaled the severity of the listings (AR 22-25, 28). The ALJ concluded that, prior to age 18, plaintiff was not under a "disability" as defined in the Social Security Act (AR 25, 28).

### B. Evaluation of Bernice Jones as an adult

Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 28). Second, the ALJ found that she suffered from severe impairments of "congenital clubfoot, s/p Achilles lengthening and casting; and borderline intellectual functioning" (AR 28). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 28). The ALJ decided at the fourth step that plaintiff "has the residual functional capacity for light physical exertion" and "would

5

be limited to unskilled tasks" (AR 28). The ALJ also found that plaintiff had no past relevant work, a limited education, and that her subjective complaints are "credible only to the extent they are supported by the evidence of record as summarized in the text of this decision" (AR 28-29).

At the fifth step, the ALJ determined that plaintiff "has the residual functional capacity to perform substantially the full range of unskilled light work" (AR 29). The ALJ provided no evidence regarding the number of jobs available to plaintiff. Rather, he found that because plaintiff could perform substantially all of the requirements of unskilled light work, she was deemed "not disabled" under Medical-Vocational Rule 202.17 (AR 28). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 29).

## III. ANALYSIS

In her initial brief, plaintiff raised the single issue that "[t]he ALJ committed reversible error by failing to find that [p]laintiff met Listing 112.05C." Plaintiff's Brief at 6.[3] In the reply brief, plaintiff clarified that she did not meet the requirements of Listing 112.05C (which require an IQ score of 59 or less), but that she did meet the requirements of Listing 112.05D (which requires an IQ score of 60 to 70 and another impairment imposing an additional limitation of function). Reply Brief at 2. Plaintiff also cites the adult listing (Listing 12.05C) which includes similar requirements to Listing 112.05D. In fairness to plaintiff, the court will view the corrected arguments as set forth in the reply brief, and consider whether her low IQ scores (between 60 and

---

[3] In plaintiff's reply brief, counsel incorrectly states that plaintiff "is now an adult but was a child at the time of hearing." Reply Brief at 1. As the court previously discussed, plaintiff was a child (age 15 years) when her mother filed the claim in 2002, but was an adult (age 18) when she appeared at the hearing on August 19, 2004 (AR 203).

6

70) and her serious physical impairment (a club foot) meet the requirements of Listings 12.05C and 112.05D.

A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

The childhood impairment, codified as Listing 112.05 (Mental Retardation) provides in relevant part as follows:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
>
> D.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. . . .

20 CFR Pt. 404, Subpt. P, App. 1, Listing 112.05D.

The comparable adult impairment, codified as Listing 12.05 (Mental Retardation) provides in relevant part as follows:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . .

20 CFR Pt. 404, Subpt. P, App. 1, Listing 12.05C.

As an initial matter, defendant contends that plaintiff cannot satisfy either mental retardation listing because she does not satisfy the diagnosis of mental retardation, i.e., that she has "significantly subaverage general intellectual functioning with deficits in adaptive behavior." Defendant's Brief at 9.  Under Sixth Circuit caselaw, a claimant must meet both the diagnostic description of mental retardation in the introductory paragraph of Listing 12.05C (i.e., "significantly subaverage general intellectual functioning with deficits in adaptive behavior") and any one of the four sets of criteria. *Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001), *citing* 20 C.F.R. Pt. 404, Subpt. P, App 1, § 12.00(A)).  *See, e.g., Carmack v. Barnhart*, 147 Fed. Appx. 557, 559-60 (6th Cir.

8

2005) (claimant did not meet the mental retardation diagnosis when none of the claimant's doctors found her to be mentally retarded at any point in her life, that she made "average" marks in high school, and that her academic scores were more compatible with her verbal IQ score of 75 than her overall score of 70); *Daniels v. Commissioner of Social Security*, 70 Fed. Appx. 868, 872-73 (6th Cir. 2003) (claimant did not meet mental retardation diagnosis when she clinically appeared to function at a level exceeding her performance IQ test score of 67).

Here, plaintiff underwent a psychological examination in October 2004, approximately two months after her 18th birthday. At that time, she had a verbal IQ score of 71, a performance IQ score of 63 and a full IQ score of 65 (AR 187-91). Her IQ scores of 63 and 65 fell within the range to qualify under Listings 112.05D and 12.05C. However, the examiner had concerns that plaintiff was not diligent during the administration of the test and that "[t]here is some likelihood that her actual functioning is somewhat higher than what her scores represent" (AR 190). The examiner also had a concern that plaintiff was purposefully attempting to fail some portions of math testing (AR 189). In this regard, plaintiff told the consultative examiner that she attends school, does basic food preparation, washes dishes, assists in grocery shopping and was unable to identify any interests that have decreased due to her symptoms (AR 188). The examiner noted that plaintiff took a taxicab to the evaluation, was unaccompanied, displayed good personal hygiene, and displayed a fair level of organization (AR 188). The examiner concluded that plaintiff "likely functions in the Borderline level of intellectual ability, or Low Average level of functioning" (AR 190).

Other evidence in the record supports the examiner's conclusion. A school activities questionnaire completed by the principal of Park High School in Grand Rapids indicated that

plaintiff was "OK" in functioning with others in class (e.g., attention span, ability to work independently, ability to complete assignments on time) and "Fine" in age appropriate hygiene/self-care and ability to get along with peers (AR 150). While plaintiff testified that she had trouble focusing on her work, that she was "four assignments behind" the other students, she stated that her grades in the last school year were "a B and two C's" (AR 214). Plaintiff has never attended special education classes (AR 210). Plaintiff testified that she was kept busy by her then two-month old baby (AR 214). In 2001, plaintiff worked for about three weeks in a fast food restaurant (AR 216-17). Plaintiff testified that she had to quit because her foot was bothering her (AR 216). Nothing in the record indicates that she was unable to perform her job due to a disabling mental condition.

Plaintiff has never been diagnosed as mentally retarded. The examiner questioned the plaintiff's effort expended during the IQ testing and concluded that she likely functioned at the borderline or low average level. Plaintiff received average marks ("a B and two C's") in school. She had no history of special education. Based on this record, plaintiff has failed to demonstrate that she has "significantly subaverage general intellectual functioning with deficits in adaptive behavior." Accordingly, she has not met the requirements of either Listing 12.05C or Listing 112.05D. *See Carmack*, 147 Fed. Appx. at 560; *Daniels*, 70 Fed. Appx. at 872-73; *Foster*, 279 F.3d at 354-55.

**IV.   Recommendation**

I respectfully recommend that the Commissioner's decision be affirmed.


Dated: May 22, 2006              /s/ Hugh W. Brenneman, Jr.
                                 Hugh W. Brenneman, Jr.
                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).